**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

GERARDO GARCIA,
*on behalf of himself, FLSA Collective*
*Plaintiffs, and the Class,*

                  Plaintiff,

       v.

RJ NY RESTORATIONS INC.,
NORTH SHORE CONTRACTOR SERVICES CORP., and
SURJIT SINGH,

          Defendants.

_____

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff GERARDO GARCIA, on behalf of himself and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, RJ NY RESTORATIONS INC., NORTH SHORE CONTRACTOR SERVICES CORP., (the "Corporate Defendants"), and SURJIT SINGH ("Individual Defendant" and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from

Defendants: (1) unpaid wages, as Defendants regularly issued paychecks to Plaintiff and FLSA Collective Plaintiffs which bounced due to insufficient funds and were then never compensated, (2) unpaid wages, including overtime, due to time-shaving, (3) liquidated damages, and (4) attorneys' fees and costs.

2.    Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, as Defendants regularly issued paychecks to Plaintiff and Class Members which bounced due to insufficient funds and were then never compensated, (2) unpaid wages, including overtime, due to time-shaving, (3) compensation for late payment of wages, (4) liquidated damages, (5) statutory penalties violations, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391, as Plaintiff's claims arose from this District.

## PARTIES

5.    For all relevant periods, Plaintiff was a resident of Bronx County, New York.

6.    Defendant RJ NY RESTORATION INC. ("RJ Restoration") is a domestic business corporation organized under the laws of the state of New York with a registered address for service of process at 25 Hicks Street, Valley Stream, NY, United States, 11580.

7.    Defendant NORTH SHORE CONTRACTOR SERVICES CORP. ("North Shore") is a domestic business corporation organized under the laws of the state of New York

with a registered address for service of process at 1 Plaza Road, Greenvale, NY, United States, 11548.

8.    Individual Defendant SURJIT SINGH is the owner of RJ Restoration.

9.    Individual Defendant SURJIT SINGH controlled, operated, and managed the daily operations and compensation structures of RJ Restoration and the construction projects in which RJ Restoration was involved. Individual Defendant SURJIT SINGH directly or indirectly had the power and authority to supervise and control all employees who worked on RJ Restoration's construction projects, including Plaintiff, FLSA Collective Plaintiffs, and Class Members.

10.    Corporate Defendant North Shore maintains control over the aspects of employment of their workers such as assigning duties, setting schedules, monitoring work, and general supervision over their employees.

11.    As a result, Plaintiff, FLSA Collective Plaintiffs, and Class members would be jointly supervised by agents of both RJ Restoration and North Shore.

12.    Plaintiff was originally interviewed and hired by North Shore to work as a laborer on their construction projects.

13.    Thus, Corporate Defendants RJ Restoration and North Shore are jointly and severally liable for the wage and hour violations alleged, in accordance with NYLL § 198(e).

14.    Plaintiff, FLSA Collective Plaintiffs, and Class Members were supervised by RJ Restorations' manager Jordan Lababneh, and by manager, Damian [LNU].

15.    RJ Restoration cooperated with North Shore, in the supervision and compensation of Plaintiff, FLSA Collective Plaintiffs, and Class Members. This is shown by the fact that Plaintiff was required to sign out time sheets which list "North Shore Contractor Services Corp"

as the employer. Plaintiff's supervisor Damian [LNU] would fill out Plaintiff, FLSA Collective Plaintiffs and Class Members' log-in and log-out times based on their pre-scheduled shifts. Damian [LNU]'s name is written on Plaintiff's timesheets. *See* **Exhibit A**.

16.    North Shore's manager, Damian [LNU] would monitor the construction work that Plaintiff, FLSA Collective Plaintiffs and Class Members were engaging in. Damian [LNU] would set Plaintiff's, FLSA Collective Plaintiff's, and Class Members' schedules, monitor the quality of their work, delegate tasks between laborers, and send them to various construction worksites.

17.    Based on the timesheets that North Shore provided to RJ Restoration, RJ Restoration would then confirm the hours that were worked and issue paychecks to Plaintiff. These paychecks state "RJ NY RESTORATIONS INC." at the top. *See* **Exhibit B**.

18.    Plaintiff and his fellow employees would complain about Defendants' wage violations to RJ Restoration's manager, Jordan Lababneh. *See* **Exhibit C**. Ultimately, SURJI SINGH was responsible for Defendants' pay policies.

19.    All named Defendants are jointly and severally responsible for wage violations against Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, RJ Restoration and North Shore were joint employers collaborating to manage and keep track of Plaintiff's, FLSA Collective Plaintiffs', and Class Members' time records, scheduling, and compensation.

20.    At all relevant times, Individual Defendant's role and decisions made in connection to his role directly affected the nature, conditions, and circumstances of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

21.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

22.    At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

23.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including laborers, construction workers, contractors, apprentices, carpenters, electricians, painters, estimators, surveyors, pipefitters, welders, roofers, ironworkers, operators, installers, plumbers, engineers, specialists, and foremen, among others), employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

25.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all which have resulted in: (1) unpaid wages, as Defendants regularly issued paychecks to Plaintiff and FLSA Collective Plaintiffs which bounced due to insufficient funds and were then never compensated; and (2) unpaid wages, including overtime, due to time-shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

26.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this

action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

27.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including laborers, construction workers, contractors, apprentices, carpenters, electricians, painters, estimators, surveyors, pipefitters, welders, roofers, ironworkers, operators, installers, plumbers, engineers, specialists, and foremen, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

28.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

29.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

30.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate

practices by Defendants, as alleged herein, of Defendants' failure to: (1) pay wages as Defendants regularly issued their payroll through checks to Plaintiff and Class Members which bounced due to insufficient funds and were then never compensated, (2) compensate spread of hours premiums, (3) ensure timely payment of wages, (4) provide proper wage and hour notices, at dates of hiring and annually thereafter, and (5) provide proper wage and hour statements. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

31.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

32.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will

be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a)    Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

    b)    Whether Corporate Defendants North Shore and RJ Restoration are liable for the alleged wage and hour violations under a theory of joint and several liability as outlined in NYLL § 198(e);

c)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

d)   Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e)   Whether Defendants failed to compensate Plaintiff and Class Members for all wages earned due to bounced checks;

f)   Whether Defendants paid Plaintiff and Class Members their owed spread of hours premiums;

g)   Whether Defendants paid Plaintiff and Class Members in a timely manner under New York Labor Law § 191;

h)   Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

i)   Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

*Wage and Hour Violations*

35.   In or around March 2024, Plaintiff was hired by North Shore to work as a laborer for various residential and commercial construction projects in Manhattan, New York. Plaintiff's work duties were that typical of general construction work. Plaintiff was required to demolish buildings, lay concrete, clean the job sites, transport tools around, tear down walls and install doors. Plaintiff GERARDO GARCIA terminated his employment at RJ NY RESTORATIONS

INC. and NORTH SHORE CONTRACTOR SERVICES CORP. in July 2024 due to his unpaid wages.

36.    Throughout his employment with Defendants, Plaintiff was scheduled to work five (5) days per week, Mondays to Fridays, for eight (8) hours a day, from 8:00 a.m. to 4:00 p.m., for a total of forty (40) hours per week. FLSA Collective Plaintiffs and Class Members were scheduled by Defendants to work similar hours. *See* **Exhibit A.**

37.    Throughout his employment, Plaintiff was compensated at an hourly rate of $28.00 an hour by check. FLSA Collective Plaintiffs and Class Members were also compensated at similar rates on an hourly basis.

*38.*    In addition to his scheduled hours, Plaintiff was always required to perform off-the-clock work before the start of his scheduled shift, for fifteen (15) minutes each day. Plaintiff's supervisor, Damian [LNU] required that Plaintiff arrive to work fifteen (15) minutes earlier to prepare the workplace and transport tools. However, Plaintiff was only paid for his pre-scheduled shift. This can be seen in Plaintiff's timesheets. *See* **Exhibit A.** Plaintiff and his co-workers were then forced to sign these inaccurate timesheets indicating only eight (8) hours per day, unwilling to correct the timesheets due to their fear of termination. Throughout his employment, Plaintiff was never compensated for any pre-shift off-the-clock work in which he engaged. As a result of this time-shaving, Plaintiff GERARDO GARCIA was not paid all wages, including overtime wages. Similarly, FLSA Collective Plaintiffs and Class Members were not paid all wages, including overtime wages.

39.    Throughout his employment, Defendants failed to compensate Plaintiff his proper wages for all hours worked, as Defendants regularly issued checks to employees which bounced due to insufficient funds. Further, despite receiving complaints about this lack of payment from

Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendants refused to reissue checks and pay employees for the work they had performed.  Plaintiff, FLSA Collective Plaintiffs, and Class Members were not paid any wages for several workweeks, in violation of the FLSA and the NYLL.

40.    On the workweeks that Plaintiff did receive a cashable check from Defendants (and not a bounced check), Defendants would withhold payment to Plaintiff and Class Members for approximately three (3) to four (4) weeks past when they were earned. Due to Defendants' improper withholding of compensation earned by Plaintiff and Class Members, Defendants paid Plaintiff and Class Members were paid late, in violation of the NYLL.

41.    Under NYLL § 191, Plaintiff and Class Members are manual workers, and thus, Defendants were required to compensate Plaintiff and Class Members within seven (7) days of the end of the week in which they earned their wages.  At all relevant times, Plaintiff spent more than 25% of their shift performing tasks that required manual labor. Plaintiff were laborers, and their duties involved demolishing buildings, laying concrete, cleaning the job site, moving tools from one site to another, tearing down walls, and installing doors. Clearly, Plaintiff's position and duties involved physical labor for the most part which qualifies them as manual laborers under the NYLL. Class Members worked in similar positions and had similar requirements of spending more than 25% of their shift engaging in manual labor. When Defendants withheld checks from Plaintiff and Class Members past their normal payday, Defendants paid Plaintiff and Class Members in violation of NYLL.

*42.*    Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their proper wages on a weekly basis, in violation of

the NYLL. Defendants' awareness and willfulness is obvious based on the fact that Defendants were intentionally misappropriating their payroll funds.

*WTPA Violation Claims*

43.      At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. Further, during the statutory period, Plaintiff and Class Members did not receive wage statements from Defendants.

44.      In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

45.      In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20, 2020)

46.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

47.     Had Defendants provided to Plaintiff and Class Members proper wage statements, as required by law, Defendants would have had to either (a) increase the wages to correspond to the spread of hour premiums earned and reflect their unpaid overtime wages due to time-shaving or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the premiums that the employee actually earned. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

48.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

49.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

50.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the Plaintiffs earned $ 133,086 as reflected on his final year paystub and W-2").[1]

51.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realchecksstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

52.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

53.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the hours worked by Plaintiff and Class Members been accurately reported for a given pay period, Defendants would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

54.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because

it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he Plaintiffs' real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at \*3-4.

55.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

56.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

57.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a

substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

58.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

59.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

60.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

### STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

61.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

62.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

63.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

64.    At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed wages, including overtime, for all hours worked, due to improper issuance of checks which bounced due to insufficient funds.

65.    At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime, due to time-shaving.

66.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

67.    Defendants knowingly and willfully disregarded the provisions of the FLSA by failing to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages. This is evidenced by Defendants' issuance of checks which bounced due to insufficient funds, despite their full knowledge that the bank accounts lacked the necessary balance.

68.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

69.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages and liquidated damages.

70.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

71.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

72.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

73.     Defendants willfully violated Plaintiff and Class Members' rights by failing to pay them for all hours worked, due to an illegal policy of time-shaving.

74.     Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failure to pay wages, as Defendants issued checks which bounced to Plaintiffs and Class Members due to insufficient funding.

75.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them weekly wages, as required by the NYLL § 191(a)(1).

76.     Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

77.     Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

78.     Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

79.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, due to Defendants' issuance of checks which bounced due to insufficient funds, unpaid wages due to time-shaving, compensation for late payment, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL,

b.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.     An award of unpaid wages, including overtime, as a result of time-shaving, due under the FLSA and the NYLL;

d.     An award of unpaid wages, including overtime, as a result of Defendants' issuance of checks which bounced due to insufficient funds, pursuant to the FLSA and the NYLL;

e.    An award of unpaid wages, including overtime, due to Defendants' failure to pay any checks for several weeks of Plaintiff's, FLSA Collective Plaintiffs, and Class Members' employment, pursuant to the FLSA and the NYLL;

f.    An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

g.    An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

h.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

i.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

j.    An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

k.    Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

l.    Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

m.    Designation of this action as a class action pursuant to F.R.C.P. 23;

n.    Designation of Plaintiff as Representative of the Class; and

o.    Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 26, 2025                                    Respectfully submitted,
        New York, New York

                                                        **LEE LITIGATION GROUP, PLLC**
                                                        148 West 24th Street, 8th Floor
                                                        New York, NY 10011
                                                        Tel.: 212-465-1188
                                                        Fax: 212-465-1181

                                                        *Attorneys for Plaintiff,*
                                                        *FLSA Collective Plaintiffs,*
                                                        *and the Class*

                                            By:    /s/ *C.K. Lee*
                                                   C.K. Lee, Esq. (CL 4086)